UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| CHRISTOPHER T. PATTERSON, | ) |
| Plaintiff, | ) |
| v. | ) Civil Case No.: |
| CITY OF MELBOURNE, | ) |
| Defendant. | ) |

**PLAINTIFF'S COMPLAINT WITH DEMAND FOR JURY TRIAL**

COMES NOW Plaintiff CHRISTOPHER T. PATTERSON ("Plaintiff" or "Patterson"), files his Complaint against Defendant, CITY OF MELBOURNE ("Defendant" or "City"), and in support he states the following:

**NATURE OF THE CLAIMS**

1. This is an action for monetary damages, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII") and the Florida Civil Rights Act of 1992, Fla. Stat. §§ 760.01 *et seq.* ("FCRA") to redress Defendant's unlawful employment practices against Plaintiff including Defendant's unlawful discrimination, harassment, retaliation against Plaintiff because of race.

1

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's civil rights under Title VII.

3. This Court has supplemental jurisdiction over Plaintiff's related claims arising under state law pursuant to 28 U.S.C. §1367(a).

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including Defendant's unlawful employment practices alleged herein, occurred in this District.

## THE PARTIES

5. Plaintiff, Patterson is a citizen of the United States, and is and was at all times material, a resident of the State of Florida, residing in Brevard County, Florida.

6. Plaintiff worked for Defendant at 900 E Strawbridge Ave., Melbourne, Florida 32901.

7. Defendant, City of Melbourne, Florida is a local government entity, a body corporate and political subdivision of the State of Florida.

8. Defendant is an employer as defined by the laws under which this action is brought and employs the requisite number of employees.

## PROCEDURAL REQUIREMENTS

9. Plaintiff has complied with all statutory prerequisites to filing this action.

10. On March 3, 2020, Plaintiff timely dual-filed a claim with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR"), against Defendant, satisfying the requirements of 42 U.S.C. § 2000e-5(b) and (e), based on race and retaliation.

11. Plaintiff's EEOC Charge was filed within three hundred days after the alleged unlawful employment practices.

12. Plaintiff amended his Charge on June 9, 2020.

13. On October 8, 2020 the FCHR sent a Notice of Rights to Plaintiff upon request.

14. On April 1, 2021 the EEOC issued to Plaintiff Notice of Right to Sue, upon request.

15. This Complaint was filed within one year of Plaintiff's receipt of the FCHR's Notice of Rights and within ninety days following Plaintiff's receipt of the EEOC's Notice of Right to Sue.

## FACTUAL ALLEGATIONS

16. Plaintiff is African American.

17. Plaintiff began working for Defendant in December 2016 and during his tenure he worked in a Maintenance position.

18. Throughout Plaintiff's employment, Defendant has discriminated against Plaintiff due to his race.

19. Plaintiff's Caucasian coworkers Joey Richards and Earl Lester repeatedly referred to Plaintiff and other African Americans as N*%$@!s.

20. Plaintiff reported the racial discrimination and continuous use of the racial slur numerous times to management to no avail. Instead of taking remedial action, Nikki Kukstis (Operations Manager, Caucasian) told Plaintiff that he should just quit.

21. Ms. Kukstis then retaliated against Plaintiff for his protected complaint by reprimanding him.

22. Ms. Kukstis continued to discriminate against Plaintiff by making racially discriminatory comments such as telling Plaintiff she was not racist because she tells her son to turn off his rap music when it uses the word N*%$@!.

23. Then, Plaintiff injured his ankle and was moved to a new location for light duty; however, Defendant continued to subject Plaintiff to racial slurs at this new location. For example, Sundae Hein also called Plaintiff a N*%$@!.

24. Plaintiff reported Ms. Hein to the Human Resources Manager Kimberly Foxworth (African American). Following his complaint, Ms. Hein confronted Plaintiff about reporting her to Human Resources, which Plaintiff also escalated.

25. Defendant terminated Ms. Hein; however, Defendant proceeded to conceal the discrimination by telling Plaintiff that if anyone asks about Ms. Hein to say she resigned demonstrating Defendant's continued refusal to take action to remedy the systemic discrimination and prevent future incidents.

26. To further discriminate against Plaintiff, Mr. Lester told Plaintiff racially charged stories as an excuse to use the word N*%$@!. For example, Mr. Lester told Plaintiff that he (Mr. Lester) was called a county N*%$@! when he worked for the City of Palm Bay. Mr. Lester also told Plaintiff that his (Mr. Lester's) father does not like black people and his sisters are not allowed to date black guys.

27. Ms. Kukstis defended Mr. Lester's discriminatory comments by stating that he was called that (county N*%$@!).

28. Plaintiff again reported the ongoing racial discrimination, this time to Dave Bossy and Cindy Meekins (Supervisor, Caucasian) and requested to be transferred; however, Defendant failed to take any remedial action or properly document Plaintiff's complaint.

29. Plaintiff further escalated his concerns of racial discrimination to Ruth Lovejoy (Human Resources, Caucasian). Again, Defendant failed to take remedial action.

30. Instead of taking remedial action once alerted to Mr. Lester's discriminatory conduct, Defendant rewarded Mr. Lester's discriminatory conduct by promoting him.

31. Plaintiff also heard Mr. Richards use the word N*%$@! repeatedly.

32. Plaintiff immediately reported Mr. Richards to Ms. Kukstis and Ms. Meekins; however, instead of taking remedial action, they instructed Plaintiff to ignore the racial discrimination.

33. Plaintiff and Mr. Murphy escalated the discrimination to Human Resources and spoke with Mr. Roosevelt (African American).

34. Mr. Roosevelt stated that he wanted to further escalate the issue to his superior, Ms. Foxworth However, instead Ms. Lovejoy accompanied Mr. Roosevelt back and prevented Mr. Roosevelt from taking any remedial action.

35. Shortly thereafter, Defendant scheduled a team meeting with Plaintiff. However, to set Plaintiff up for failure Defendant changed the meeting time at the last minute without informing Plaintiff of the new time.

36. Defendant's intentional discriminatory act caused Plaintiff to miss the meeting.

37. Defendant then issued Plaintiff a write up for missing the meeting.

38. Conversely, Defendant permitted Plaintiff's Caucasian counterpart, Dave, to disruptively stand up and walk out of meetings while exclaiming that the meetings are wastes of time without reprimand.

39. In addition to Mr. Lester and Mr. Richards, Defendant freely and knowingly create a hostile work environment by permitting other employees to use the word N*%$@!, along with other racial slurs, and make derogatory comments.

40. For example, Defendant permits Caucasian employees Gary Langworthy, Kenny Johnson, John Clark, Sundae Hein, and Matt Ward to use the word N*%$@! freely in the workplace and around Plaintiff. Further, Gordy Lemon (Caucasian) forcibly kissed Plaintiff on the cheek and stated something to the effect of "mmm, Chocolate."

41. Joshua Santiago (Hispanic) heard Mr. Langworty, Mr. Johnson, Mr. Ward, and several other Caucasian employees refer to African Americans as N*%$@!^ and reported concerns of discrimination to Jason Bussendorf by requesting a diversity training class to specifically address the racial discrimination. In response, Mr. Bussendorf told Mr. Santiago that it was life and to deal with it, which Mr. Santiago escalated to Ms. Kukstis to no avail.

42. Defendant willfully refused to deter or address the discriminatory conduct.

43. Defendant's pattern and practice of discrimination is further evidenced by the fact that even after Mr. Clark admitted to calling Ms. Foxworth a stupid N*%$@! Defendant rewarded Mr. Clark with early retirement benefits.

44. Defendant proceeded to discriminate and retaliate against Plaintiff for his engagement in protected activity by repeatedly transferring him to various locations until he was completely isolated to prevent him from further escalating discrimination.

45. Suddenly, Defendant refused to continue providing Plaintiff light duty accommodations and required Plaintiff to either return to full duty or change departments under the threat of termination despite providing his Caucasian counterparts, such as Mr. Lester, with light duty for longer periods of time.

46. Plaintiff informed Defendant that the worker's compensation doctor anticipated clearing Plaintiff to return to full duty at the next appointment in 5-6 weeks and applied for other positions for which he was qualified. Defendant prevented Plaintiff from obtaining an alternative position and terminated Plaintiff, despite Plaintiff having an imminent anticipated return to work date, to further discriminate and retaliate against Plaintiff.

47. Plaintiff has been damaged by Defendant's illegal conduct.

48. Plaintiff has had to retain the services of undersigned counsel and has agreed to pay said counsel reasonable attorneys' fees.

## Count I:
## Race Based Discrimination in Violation of Title VII

49. Plaintiff re-alleges and adopts, as it fully sets forth herein, the allegations stated in Paragraphs 1-48 above.

50. At all times relevant to this action, Plaintiff was in a protected category under Title VII because of his race, African American.

51. Defendant is prohibited under Title VII from discriminating against Plaintiff because of his race regarding discharge, employee compensation, and other terms, conditions, and privileges of employment.

52. Defendant violated Title VII by unlawfully targeting and discriminating against Plaintiff based on his race.

53. Defendant intentionally discriminated against Plaintiff based on his race.

54. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer, lost wages, lost benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and

emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

54. Defendant has engaged in discriminatory practices with malice and reckless indifference to Plaintiff's federally protected rights, thereby entitling him to punitive damages.

## Count II:
## Retaliation in Violation of Title VII

56. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-48 above.

57. Plaintiff engaged in protected activity under Title VII while employed by Defendant by reporting concerns of race discrimination.

58. Title VII prohibits retaliating against an employee for engaging in protected conduct.

59. Defendant engaged in intentional retaliation against Plaintiff for his participation in protected activity.

60. Defendant's conduct violated Title VII.

61. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer, lost wages, lost benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation,

embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

62. Defendant has engaged in discriminatory practices with malice and reckless indifference to Plaintiff's federally protected rights, thereby entitling him to punitive damages.

## Count III:
## Race Based Discrimination in Violation of the FCRA

63. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-48 above.

64. At all times relevant to this action, Plaintiff was in a protected category under the FCRA because of his race, African American.

65. Defendant is prohibited under the FCRA from discriminating against Plaintiff because of his race with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

66. Defendant violated the FCRA by discharging and discriminating against Plaintiff based on his race.

67. Defendant intentionally discriminated against Plaintiff on the basis of his race.

68. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the FCRA, Plaintiff has suffered and continues to suffer, lost wages, lost benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

69. Defendant's unlawful conduct in violation of the FCRA was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling him to an award of exemplary and/or punitive damages.

## Count IV:
### Retaliation in Violation of the FCRA

70. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 1-48 above.

71. Plaintiff engaged in protected activity when he reported concerns of race discrimination.

72. Defendant is prohibited under the FCRA from retaliating against Plaintiff for engaging in protected activity.

73. Defendant intentionally retaliated against Plaintiff for engaging in protected activity.

74. As a direct and proximate result of Defendant's unlawful and retaliatory conduct in violation of the FCRA, Plaintiff has suffered lost wages, lost benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which Plaintiff is entitled to an award of monetary damages and other relief.

75. Defendant's unlawful conduct in violation of the FCRA was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of exemplary and/or punitive damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, requests this Honorable Court:

a) Enter judgment requiring Defendant to pay back wages and back benefits found to be due and owing at the time of trial, front-pay, compensatory damages, including emotional distress damages, in the amount to be proved at trial, punitive damages, and prejudgment interest thereon;

b) Granting Plaintiff costs and an award of reasonable attorneys' fees (including expert witness fees); and

c) Award any other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all triable issues herein.

>Respectfully Submitted:
>
>**/s/ Zane A. Herman**
>Zane A. Herman
>Florida Bar No.: 120106
>Spielberger Law Group
>4890 W. Kennedy Blvd., Suite 950
>Tampa, Florida 33609
>T: (800) 965-1570 ext. 105
>F: (866) 580-7499
>zane.herman@spielbergerlawgroup.com
>
>*Counsel for Plaintiff*